# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
One Samsung J7 Galaxy seized as line item 1 under FPF No. 2019250600109802 )

Case No. **19MJ4144**

FILED
SEP 24 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance; |

The application is based on these facts:
See attached Affidavit of Special Agent Alejandro Rascon

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Alejandro Rascon, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/24/2019

City and state: San Diego, CA

*Judge's signature*

Hon. F.A. Gossett
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Alejandro Rascon, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for search warrants in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following electronic devices:

   a. One Apple iPhone seized as line item 3 under FPF No. 2019250600109801 (TARGET TELEPHONE # 1), described in Attachment A-1 (incorporated herein by reference);

   b. One Samsung J7 Galaxy seized as line item 1 under FPF No. 2019250600109802 (TARGET TELEPHONE # 2), described in Attachment A-2 (incorporated herein by reference);

(collectively the "TARGET TELEPHONES"), which were seized from Adrinna AHUMADA and Christian ARCE-Morales on August 28, 2019, incident to their arrest for importation of methamphetamine at the Otay Mesa, California Port of Entry.

2. TARGET TELEPHONE #1 was seized from Adrinna AHUMADA. TARGET TELEPHONE #2 was seized from Christian ARCE-Morales.

3. The TARGET TELEPHONES are currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 2255 Niels Bohr court, San Diego, CA 92154 (Seized Property Vault).

4. I seek authority to search the TARGET TELEPHONES for evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachments B-1 and B-2 (incorporated herein by reference) for the time period from June 1, 2019, through August 28, 2019.

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS     1

## TRAINING AND EXPERIENCE

5.  I have been a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), since November 2016. I am assigned to a Contraband Smuggling group in San Ysidro, CA, that focuses on contraband smuggling of the importation of a controlled substance on the Southwest Border. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses working closely with other agencies, including the U.S. Drug Enforcement Administration and multiple state and local agencies.

6.  As a federal law enforcement officer for over 7 years, I have received formal training, as well as extensive on the job training, relating to the investigation of narcotics trafficking, bulk cash smuggling, and techniques used for contraband smuggling. I have investigated illicit narcotics, controlled substances, and other crimes that have resulted in arrests, indictments, and convictions. While participating in these and other criminal investigations, I have executed search warrants on residences, vehicles and electronic media, such as cell phones. As a result of these investigations, I have become familiar with methods and techniques used by narcotics traffickers to import narcotics into the U.S. and distribute those narcotics within the United States.

7.  In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8.  Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANTS

2

      a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

      b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

      c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

      d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

      e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

      f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

      g. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

8. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary

or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular telephones yields evidence:

    a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

    d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    e. relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

    f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation,

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANTS
4

including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 28, 2019, at approximately 1:05 A.M., Adrinna Danielle AHUMADA, ("AHUMADA"), and Christian ARCE-Morales ("ARCE"), both United States Citizens, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle #4. AHUMADA was the driver and ARCE was the passenger and registered owner of a 2007 Scion TC ("the vehicle") bearing California license plates. A Customs and Border Protection Officer (CBPO) asked where AHUMADA was traveling and AHUMADA stated they were going to Perris, CA. The CBPO received two negative Customs declarations. During the CBPO's inspection, a Customs and Border Protection Canine Enforcement Officer (CEO) and his Narcotics Human Detector Dog (NHDD) alerted to the presence of a trained odor emanating from the back of the vehicle. AHUMADA, ARCE, and the vehicle were referred to secondary for further inspection.

11. In secondary inspection, vehicle x-ray machines screened the vehicle and observed anomalies inside the rear quarter panels. CBPOs then found approximately 28 packages with a total weight of approximately 14.04 kilograms (30.95 pounds) in the driver and passenger side rear quarter panels. The substance inside the packages preliminarily tested positive for methamphetamine.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANTS

5

12. Officers placed AHUMADA and ARCE under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. At the time of their arrest, AHUMADA was in possession of TARGET TELEPHONE #1, and ARCE was in possession of TARGET TELEPHONE #2. Officers seized the TARGET TELEPHONES incident to their arrest.

13. AHUMADA waived her *Miranda* rights and elected to make a statement. AHUMADA denied knowledge of the drugs. AHUMADA stated they first went to an outlet and then a hotel. AHUMADA stated she did not know the name of the outlet or the hotel. AHUMADA stated they met up with a few of ARCE's friends. AHUMADA stated on the first night in Tijuana they went to a store named OXXO to buy snacks and drinks and then went back to the hotel. AHUMADA stated that, the next day, they took a taxi to the beach. AHUMADA stated she does not know who paid for the taxi.

14. ARCE waived his *Miranda* rights and elected to make a statement. ARCE denied knowledge of the drugs. ARCE stated they first went to a hotel and he did not know the name of the hotel. ARCE did not mention they met up with his friends while in Tijuana. ARCE stated the first night in Tijuana they went out drinking and then back to the hotel. ARCE stated he did not know the name of the bar. ARCE stated AHUMADA paid for the taxi.

15. California vehicle registration records seized from the vehicle showed ARCE was the registered owner and that the vehicle had a registration date of approximately March 19, 2019.

16. The crossing history shows that the vehicle crossed southbound from the United States into Mexico on August 26, 2019, at approximately 6:26 p.m., at the San Ysidro Port of Entry. It appears that ARCE was the driver and AHUMADA the front seat passenger at the time of that crossing.

17. A telephonic interview with Maria Morales, ARCE's mother was conducted on August 29, 2019. Morales told agents that she last saw ARCE on August 26, 2019, before he went to work. She also told agents that AHUMADA is a friend of ARCE's and AHUMADA spent the night at their house on Sunday, August 25.

18. Morales told agents that a friend of ARCE, Nathan Maldonado, had information about ARCE being recruited to smuggle money into the United States by "Alicia." Agents spoke with Maldonado by phone on August 29, 2019. Maldonado explained that ARCE and Alicia were at Maldonado's house on August 26, 2019. ARCE agreed to bring money from Tijuana into the United States in exchange for $3500.

19. Based upon my experience and investigation in this case, I believe that AHUMADA, ARCE, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some prohibited narcotics. Based on my experience investigating narcotics smugglers, I also believe that AHUMADA and ARCE may have used the TARGET TELEPHONES to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of AHUMADA, ARCE, and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses,

appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the TARGET TELEPHONES have been in the custody of HSI since the date of AHUMADA's and ARCE's arrest, I believe that this information continues to be stored on the TARGET TELEPHONES.

21. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports that probable cause exists to search the TARGET TELEPHONES for information dating back to June 1, 2019, which is approximately two months after the date on the vehicle registration on March 19, 2019, and approximately three months before the crossing that resulted in arrest in this case on August 28, 2019.

## SEARCH METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to believe that AHUMADA and ARCE used the TARGET TELEPHONES to facilitate the offenses of importing methamphetamine or other federally-controlled substances. The TARGET TELEPHONES were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANTS

9

23. There is also probable cause to believe that evidence and instrumentalities of illegal activity committed by AHUMADA and ARCE continues to exist on the TARGET TELEPHONES.

24. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachments B-1 and B-2 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 through A-2, and seize the items listed in Attachments B-1 through B-2.

ALEJANDRO RASCON
HSI Special Agent

Subscribed and sworn to before me this 2⁴ day of September, 2019.

HON. F. A. GOSSETT
United States Magistrate Judge

**ATTACHMENT A-1**

PROPERTY TO BE SEARCHED

One Apple iPhone seized as line item 3 under FPF No. 2019250600109801

(TARGET TELEPHONE #1)

currently in the possession of Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Office of the Deputy Special Agent in Charge, at the San Ysidro Evidence Vault at 2255 Niels Bohr Court, San Diego, California 92154.

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

One Samsung J7 Galaxy seized as line item 1 under FPF No. 2019250600109802

(TARGET TELEPHONE #2)

currently in the possession of Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Office of the Deputy Special Agent in Charge, at the San Ysidro Evidence Vault at 2255 Niels Bohr Court, San Diego, California 92154.

## ATTACHMENT B-1
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2019, up to and including August 28, 2019.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## ATTACHMENT B-2
### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2019, up to and including August 28, 2019.

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.